PENACHIO MALARA, LLP
ATTORNEYS AT LAW

ANNE J. PENACHIO*
FRANCIS J. MALARA*

*ALSO ADMITTED IN CT

235 MAIN STREET
WHITE PLAINS, NEW YORK 10601
TELEPHONE (914) 946-2889
FACSIMILE (914) 946-2882

May 25, 2011

**By Electronic Mail rdd@nysb.uscourts.gov and By Hand**

The Honorable Robert D. Drain
United States Bankruptcy Judge
The Charles L. Brieant, Jr. Federal Building and Courthouse
300 Quarropas Street
White Plains, NY 10601

                        Re:   Richards Conditioning Corp.
                                 Chapter 11 Case No.: 09-22525

                                 Richards Conditioning Corp. V. Lawrence Hopwood
                                 Adv. Pro. No.: 10-08408 (RDD)

Dear Judge Drain:

       I serve as counsel to Richards Conditioing Corp., the above-referenced debtor and plainitff in the adversary proceeding. I am wriitng to advise the Court of a development in the case which may impact the hearing before you tomorrow.

       Defendant Lawrence Hopwood moved in New York State Court, by order to show cause, to vacate the lis pendens that the Debtor filed against his property on 47 Sturgis Road, Bronxville, NY (the "Home"). Defendant is selling the Home and intends to contemporaneously purchase a new home in the same general vicinity.

# PENACHIO MALARA, LLP
## ATTORNEYS AT LAW

The application in State Court was substantially similar to the application scheduled to be heard before you on May 26, 2011. Judge Richard Liebowitz presided over the Defendant's application and heard oral argument on May 24, 2011. Judge Liebowitz ruled that he had concurrent jurisdiction to entertain the application on what he characterized as "an isolated issue" presented in the application.

Essentially, Judge Liebowitz, on consent of the parties, ruled that he would enter an order whereby the Debtor would file a substitute *lis pendens* on Defendant's new residence. A copy of the transcript is submitted herewith. I respectfully refer the Court to pages 10-13.

I believe that Judge Liebowitz's decision may resolve a substantial portion of the Defendant's motion which is returnable tomorrow.

Respectfully,

Anne Penachio

cc: Kevin G. Roe, Esq. (By electronic mail)

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------x
RICHARDS CONDITIONING CORP.,

                    Plaintiff(s),     INDEX NO.
                                      404-11
         -against-

LAWRENCE P. HOPWOOD,

                    Defendant(s).    Proceedings
------------------------------------x
                    May 24, 2011
                    111 Martin Luther King Blvd.
                    White, Plains, New York 10601
B E F O R E:

         THE HONORABLE RICHARD B. LIEBOWITZ,

                    JUSTICE.

A P P E A R A N C E S:

    For the Plaintiff:
         PENACHIO MALARA, LLP
         235 Main Street
         White Plains, NY  10601
    BY:  ANNE J. PENACHIO, ESQ.

    For the Defendant:
         KEVIN J. ROE, ESQ.
         425 Summit Avenue
         Hackensack, NJ  07601


    Also Present:
         MARTIN J. HOPWOOD, JR.


                    EVA VERSACI
                    SENIOR COURT REPORTER
```

1   THE CLERK: This is Richards Conditioning Corp.
2  versus Lawrence Hopwood, number two on the calendar, index
3  number 404-2011. Counsel, your appearance, please.
4   MR. ROE: Kevin Roe on behalf of the moving party,
5  the defendant Lawrence Hopwood.
6   MS. PENACHIO: Anne Penachio on behalf of the
7  plaintiff, Richards Conditioning Corp., Penachio Malara,
8  LLP, 235 Main Street, White Plains New York.
9   THE COURT: Who is the proponent of the
10  application?
11   MR. ROE: If your Honor, please, I'm the proponent.
12   THE COURT: On behalf of the application, I'll hear
13  you.
14   MR. ROE: Thank you. I bring this application,
15  there is a pending litigation in United States Bankruptcy
16  Court in which Richard's Conditioning has filed for
17  protection under Chapter 11. An adversary proceeding was
18  commenced by the bankrupt estate seeking to avoid certain
19  transfers allegedly made or which were alleged to be
20  avoidable under certain sections of the bankruptcy code.
21   There is currently right now an answer and
22  counterclaim filed on issues joined before Judge Drain in
23  the bankruptcy court. The plaintiff brought an application
24  before Judge Drain to prohibit the transfer the consummation
25  of the sale of the principal marital residence of Lawrence

1  Hopwood, which is owned jointly with his wife, a
2  non-defendant and non-judgment debtor or potential judgment
3  debtor spouse. They had owned this property as the
4  principal marital residence for 20 some years. They had
5  sold the property and there is a closing date for which
6  previously had been scheduled in April but was postponed,
7  and now a notice of time of the essence has been served
8  seeking a closing for June 1st.
9      Ms. Penachio came before the bankruptcy court and
10 sought an order to restrain the transfer and to defeat that
11 sale, or at least prohibit the sale, or have the proceeds
12 from the sale paid into an escrow account.
13     The application, when it came before Judge Drain,
14 Lawrence Hopwood appeared and was questioned by the Court as
15 to the intended disposition of the proceeds from that sale.
16 In fact, there is the purchase -- the sale and purchase of a
17 new principal marital residence Lawrence Hopwood and his
18 wife, again, not a party to this action at all.
19     THE COURT: The proceeds from that sale will be
20 used to fund the purchase a new piece of property?
21     MR. ROE: Yes. And that issue was specifically
22 addressed by Judge Drain of Mr. Hopwood to the extent that
23 90 to 95 percent of the proceeds -- I think it was a
24 request of about $40,000, would not be used -- would go
25 towards the purchase of the new house, but that, in fact, it

was a down size -- this is a down size from a larger home to a smaller home, and it's the principal marital residence.

Judge Drain denied the plaintiff's application to restrain that sale, and causing thereafter no prohibition. Judge Drain questioned Mr. Lawrence Hopwood in Court and refused the plaintiff's request that there be any restraint, or that the proceeds be paid into any escrow account following or upon the closing of the title.

Now Ms. Penachio turns around and files the lis pendens in this Court, or with the County Clerk, which brings us here today.

THE COURT: The lis pendens was filed on the property that they presently own?

MR. ROE: Yes, which is the subject of the contract of sale, and which is scheduled to close, pursuant to time of the essence letter, on June 1st.

THE COURT: What legal effect would the lis pendens have?

MR. ROE: It would create a cloud on the title, if your Honor, please.

THE COURT: I understand that. But would it stop the sale?

MR. ROE: I believe it could, yes.

THE COURT: You believe or do you know it?

MR. ROE: I believe it, Judge.

1  THE COURT: But you're not certain? So with the
2  lis pendens the sale could go forward? Is that what
3  you're --
4  MR. ROE: Judge, I don't believe it could. I
5  believe that it does constitute a cloud on the title for
6  which the title insurance company I do not believe will
7  insure against. And because the claim is somehow this is to
8  defraud a creditor, in a sense, which is -- who doesn't even
9  have a judgment against it, and for which this property has
10 no relation to the claim whatsoever. The property in
11 question has been owned for the past 21 years by Mr. Hopwood
12 and his wife, and has -- was not purchased with the proceeds
13 or any monies received in connection with his separation
14 from the debtor corporation.
15          Again, Judge Drain was asked to prohibit that sale,
16 or to restrain that sale, or the proceeds be paid into --
17 and he denied it.
18          THE COURT: I understand that but now we're talking
19 about the lis pendens.
20          MR. ROE: Correct.
21          THE COURT: That's what's before me here.
22          MR. ROE: Correct. And if, your Honor, please, I
23 do not believe insofar as the claim of the plaintiff has --
24          THE COURT: I have a problem with the word believe.
25 Let me -- when counsel uses that kind of a word I say to

myself, well are there parameters here that define what the word believe means in terms of what could happen or what might not happen? You follow?

MR. ROE: Judge, I could verify that with a phone call. I do not represent him on the closing of the --

THE COURT: Who would you call if I gave you a few moments?

MR. ROE: I would call the title company or the closing attorney and the title company.

THE COURT: Will let me stop the clock; go make your phone call.

MR. ROE: Thank you very much, Judge.

(Whereupon, there was a brief pause in the proceedings.)

THE COURT: What did you find out?

MR. ROE: Mr. Horgin, the real estate attorney, is at a funeral right now. If I could get -- I could do a couple other calls and find out.

THE COURT: We're out of time. Counsel has got to be before another judge as we speak. I don't want her to get in trouble, nor do I want you to get into trouble.

As it stands right now, how much is at stake between your client and the other side? There's a dollar amount that's in issue here.

MR. ROE: Their claim is 400,000, $420,000.

1  THE COURT: And how much -- what is the amount of
2  money transferred as a result of the sale?
3  MR. ROE: About $900,000. Which is all getting
4  rolled into --
5  THE COURT: I understand you need every penny of it
6  to buy this new place.
7  MR. ROE: Right.
8  THE COURT: So in the event we tried to structure
9  some kind of a settlement of the issue, it would not be able
10 to be done because the amount that is going to be generated
11 for the sale will be needed for another purchase.
12 MR. ROE: Correct.
13 THE COURT: All right.
14 MR. ROE: For a house here in Westchester County.
15 In effect it doesn't change their ability to go and
16 execute because it's from one piece of property to another
17 piece.
18 THE COURT: That calls into mind another option
19 that I was thinking about.
20 IS there some kind of security interest that can be
21 placed on the new home to protect your client?
22 MS. PENACHIO: Your Honor, I believe that perhaps
23 an arrangement along those lines would be satisfactory. If
24 I may, my client's sole concern at this juncture is
25 preserving the assets and preventing them from being

1  dissipated.
2  THE COURT: He wants to know in the event he's
3  successful he will have access to a fund of monies that
4  would make him whole, so to speak.
5  MS. PENACHIO: That is correct, your Honor.
6  THE COURT: Could you work something out with your
7  adversary to provide a measure of security for the other
8  side depending the outcome of the litigation, and not stop
9  the sale?
10  MR. ROE: If your Honor, please, they would have
11  their rights anyway. If they -- there's no judgment here is
12  the thing, and the claim has nothing to do with the
13  properties. It's not a mortgage --
14  THE COURT: I understand that, counsel, but bear
15  with me if you will. Bear with me if you will, I'm talking
16  collectively to several capable attorneys appear before me,
17  and I'm reaching out to you both to see if you can't
18  construct a modality which would preserve this individual's
19  concerns for another day at another time, and not stop the
20  sale, or interfere with it in any way now so that your
21  clients can proceed according to the plan that they have
22  already embarked upon. Could that be done?
23  MR. ROE: I'll certainly take it up with my client.
24  It doesn't necessarily do violence to any --
25  THE COURT: I see no harm that could rise from

1  this. They'll have the house, and the issue that is before
2  the Court will still be able to be addressed on another date
3  at another time, and for now no harm would be done to
4  anybody. Your client would get what he needs, he would get
5  what he needs and you move on.
6  MR. ROE: Understood.
7  THE COURT: I'm going to regard this as -- briefly
8  give me what you consider to be your opposition, but I'm
9  going to suggest that you both immediately take advantage of
10  whatever time you have left to address that issue and
11  construct something so that both sides can see some
12  daylight. Opposition?
13  MS. PENACHIO: Thank you, your Honor. First I'd
14  like to point out for the record that the -- that a
15  certificate of default had been entered by the clerk of the
16  bankruptcy court against the defendant in this case. The
17  bankruptcy judge lifted the default, but as an express
18  condition of lifting the default the bankruptcy judge
19  imposed certain requirements on the defendant to protect the
20  plaintiff from harm.
21  My argument was that if the default was lifted,
22  that my client would suffer prejudice in that assets could
23  be dissipated and the bankruptcy judge was very sensitive to
24  that concern, he denied my motion for prejudgement writ of
25  attachment, but he clearly said in the transcript on page

1  ten, which is annexed to my opposition papers, file a lis
2  pendens. You have the ability to file a lis pendens, and he
3  cited New York Debtor Creditor Law.
4  Following the hearing I went out and I filed a lis
5  pendens. And the judge also imposed a requirement upon the
6  defendant to report to me within 14 days of any
7  extraordinary transfer of assets, and I thought that was a
8  fair ruling under the circumstances.
9  THE COURT: Let me stop you momentarily. When is
10 the sale supposed to take place?
11 MR. ROE: June 1st.
12 THE COURT: That gives you about a week. How long
13 would it take you to file a lis pendens against the new
14 premises?
15 MS. PENACHIO: A day. I don't believe it will take
16 very long. I certainly would make it a priority, a couple
17 of days.
18 MR. ROE: I would suggest right after the closing
19 we'll notify there was a closing and she files a lis pendens
20 and she's equally protected at that point.
21 THE COURT: Here's what we're going to do. I'm
22 going to grant the order to show cause on condition. You're
23 movant on this, you're the respondent. I'm going to deny
24 the order to show cause but provide that you file the lis
25 pendens against the new home contemporaneous with the sale.

1   You'll give her the information that she needs to prepare
2   the lis pendens in advance so that there's no time lapse. I
3   want the lis pendens to be filed on the new home
4   simultaneously with the transfer of title so that your
5   client is not in any jeopardy, and his client is not in any
6   jeopardy, because he's got a time of the essence
7   transaction.
8           MS. PENACHIO: May I just have a moment to confer
9   with my client? I believe that that is satisfactory, but
10  just a moment.
11          (Whereupon, there was a brief pause in the
12  proceedings.)
13          MS. PENACHIO: My client does have a concern that
14  there are other -- another judgment creditor --
15          THE COURT: That's why I want this to be done
16  immediately; at the same time the deed is transferred and
17  passing checks around you'll have your lis pendens. As a
18  matter of fact you can provide it to the closing title
19  person beforehand if you wish with instructions to record it
20  immediately. You'll provide her with whatever information
21  she needs in order to make that happen.
22          MR. ROE: What I was going to suggest, and I think
23  your Honor is on the right track here, it would be that --
24  I'll let her know and she can come to the closing and
25  provide us with a discharge on one and a lis pendens on the

```
 1  other at the closing.
 2          MS. PENACHIO:  That -- I believe that that would be
 3  satisfactory.  I would just, as a matter of just comedy I
 4  would just like to recommend that to the bankruptcy judge
 5  and make sure he has no opposition since it affects his --
 6  but I don't have a problem with that.
 7          THE COURT:  Counsel, as far as I'm concerned I'm a
 8  court of concurrent jurisdiction with the bankruptcy court
 9  on this isolated issue.  Do it this way so that neither one
10  of these sides gets harmed in any way.  All right?
11          MS. PENACHIO:  Very well.
12          THE COURT:  You go to the closing, you'll provide
13  her with the information that she needs in order to do this
14  simultaneous with the transaction so there's no harm done.
15  And you'll be able to sleep, and the other side will have
16  their home.  All right?
17          MR. ROE:  I'll prepare a formal order.
18          THE COURT:  Prepare an order providing these
19  conditions and I'll be happy to sign it.
20          MR. ROE:  Okay.
21          MS. PENACHIO:  Thank you very much, your Honor.
22          THE COURT:  Very well.
23          MR. ROE:  Thank you.
24          THE COURT:  For the record, its denied on the
25  record except that there are certain conditions which will
```

1  be specified in the order that were expressed on the record.
2      MS. PENACHIO: Thank you.
3      -oOo-
4      CERTIFIED to be a true and accurate transcription
5  of the stenographic notes.
6
7
8  *Eva Versaci* (signature)
9  Eva Versaci
   Senior Court
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25